## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| MICHAEL B. MCDONALD, | ) | |
| | ) | Bankruptcy No. 17-00400 |
| Debtor. | ) | |
| | ) | |
| A.Y. MCDONALD | ) | |
| INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. 17-09033 |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL B. MCDONALD, | ) | |
| | ) | |
| Defendant. | ) | |

## RULING ON MOTION FOR SUMMARY JUDGMENT

This matter came before the Court for telephonic hearing on January 24, 2018.  Brian Kane appeared for Plaintiff, AY McDonald Industries, Inc. ("AY").  Michael McDonald ("Debtor") appeared for himself pro se.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## STATEMENT OF THE CASE

Debtor was formerly a member of the board of directors and an officer of AY, as well as an employee of an AY subsidiary.  Debtor was fired or resigned from all of his positions with AY and its subsidiary after the company learned he

had misappropriated funds. Debtor signed a promissory note and Restitution

Agreement in which he agreed to pay restitution to AY and liquidate property to

make payments on the promissory note. In a later Amendment to Restitution

Agreement, Debtor also agreed to sign a power of attorney ("POA") allowing the

appointed attorney-in-fact to pay over to AY distributions Debtor received from

two spendthrift trusts. In exchange, AY agreed to cease collection activities. This

POA remained in place until Debtor attempted to revoke it on the same day he

filed for bankruptcy.

In this adversary action, AY asks the Court to find the debt Debtor owes to

AY to be nondischargeable under 11 U.S.C. § 523(a)(4) and 11 U.S.C. § 523(a)(6).

AY also asks the Court to declare Debtor's attempted revocation of his POA

invalid and enjoin him from attempting to do so in the future. Finally, AY asks the

Court to dismiss Debtor's counterclaim that AY violated Iowa Code

§ 633A.2302(2) and that he is entitled to damages for this purported violation. AY

filed a Motion for Summary Judgment on these issues. Debtor, acting pro se, filed

an objection to AY's Motion on February 26, 2018.

The Court finds that summary judgment is appropriate. The Court dismisses

Debtor's counterclaim with prejudice. The Court denies AY's Motion for

Injunctive and Declaratory Relief, finding that the proper remedy for Debtor's

revocation of his POA is AY's release from its obligation to cease collection

2

activities under the Amendment to Restitution Agreement.  Finally, the Court finds

that Debtor's debt to AY is nondischargeable under 11 U.S.C. § 523(a)(4).

## STATEMENT OF THE FACTS

From October of 1983 to May of 2012, Debtor was an employee of A.Y.

McDonald Mfg. Co., which is a subsidiary of AY.  From October of 1983 to May

of 2012, Debtor was a member of the board of directors of AY.  From 1989 to May

of 2012, Debtor was an officer of both A.Y. McDonald Mfg. Co. and AY.

Immediately before his termination, Debtor was Senior Vice President of AY.

Part of Debtor's duties as Senior V.P. of AY was to manage payroll for

executive compensation.  At some point before May 2012, AY learned that Debtor

authorized payments to himself which were disproportional to payments made to

other executives.  AY believed these payments were improper.  On May 1, 2012,

AY terminated Debtor as an employee of A.Y. McDonald Mfg. Co. and as Senior

V.P. of AY.  On that same day, Debtor resigned from AY's board of directors.

On May 16, 2012, McGladrey LLC, an accounting firm, issued a letter to

AY summarizing the payments Debtor authorized to himself.  AY then hired

Control Risks, a risk assessment consulting firm, to investigate Debtor.  Control

Risks sent two consultants to AY's office in Dubuque to interview Debtor and

several other individuals regarding Debtor's actions.  In his interview with Control

Risks, Debtor made several incriminating statements regarding misappropriation of

3

AY funds.  Control Risks issued a report summarizing its interview with Debtor, making recommendations regarding efficient restitution arrangements, and providing a detailed list of Debtor's assets.

On July 19, 2012, Debtor signed a promissory note agreeing to pay AY $2,538,500 for the misappropriated funds.  On August 31, 2012, Debtor signed a Restitution Agreement in which he acknowledged that he engaged in conduct not authorized by AY's board of directors and agreed to pay AY the amount listed in the promissory note as restitution.  Under the Restitution Agreement, Debtor also agreed to liquidate, or use his best efforts to liquidate, property, including his 401k, and to pay liquidation proceeds toward the promissory note.  In the Restitution Agreement, Debtor also agreed to sign a Statement of Confession of Judgment, which AY would file in state court in the event that Debtor defaulted under the Restitution Agreement.

Debtor defaulted on the Restitution Agreement on June 13, 2013.  AY filed the Statement of Confession of Judgment in Dubuque County District Court, Case No. 01311 LACV058015.  AY alleged that Debtor defaulted under the Restitution Agreement by failing to liquidate his 401k.  Judge Margaret Lingreen signed and entered a Judgment of Confession the same day for the amount then owing on the promissory note, $1,325,174.89.  Debtor filed a Motion to Vacate that judgment. Judge Michael Shubatt denied Debtor's Motion to Vacate on November 11, 2013.

AY made various collection efforts against Debtor after he defaulted under

the Restitution Agreement.  On October 21, 2014, Debtor signed the Amendment

to Restitution Agreement (the "Amendment").  Under the Amendment, AY agreed

to cease collection activities against Debtor if he executed a POA.  Debtor did so

and under this POA the appointed attorney-in-fact received Debtor's quarterly

income payments from two trusts of which Debtor was a beneficiary, the J. Bruce

McDonald Trust and the Delos L. McDonald Trust.  The attorney-in-fact paid

those disbursements to AY.  From December 2014 to March 2017, AY received a

total of $167,134.21 in payments under this arrangement.

Debtor filed for bankruptcy on April 10, 2017.  AY filed a Motion for Relief

from Stay on May 19, 2017.  On May 22, 2017, AY filed its first adversary,

Adversary Proceeding No. 17-09027, asking this Court to find its debt

nondischargeable under 11 U.S.C. § 523(a)(4) and 11 U.S.C. § 523(a)(6).  On May

31, 2017, Debtor's attorney mailed to AY a document that purported to revoke

Debtor's POA.  Debtor signed it dated May 10, 2017.

AY filed this adversary proceeding on June 6, 2017.  AY again requests that

this Court find Debtor's debt to AY nondischargeable under 11 U.S.C. § 523(a)(4)

and (6).  Additionally, AY asks this Court to void Debtor's May 10, 2017

revocation of his POA and issue an injunction preventing Debtor from attempting

to revoke his POA in the future.  On July 6, 2017, Debtor answered AY's second

5

adversary complaint. Debtor also made a counterclaim arguing that the

Amendment to Restitution Agreement violated Iowa Code § 633A.2302(2). The

Court consolidated AY's two adversaries into the present action on July 31, 2017.

The Court issued an Order deferring hearing on AY's Motion for Relief

from Stay until after this dispositive motion is resolved. In that same Order, the

Court ordered the trustees of the J. Bruce McDonald Trust and the Delos L.

McDonald Trust to either continue making distributions to the attorney-in-fact

appointed under Debtor's POA or hold such distributions pending the resolution of

this adversary proceeding. The Court ordered whichever party received the

distributions to hold the funds and not distribute them to AY or Debtor. The

attorney-in-fact subsequently resigned. All distributions from the two trusts have

been held by the trustees pursuant to this Court's Order.

AY filed a Motion for Summary Judgment on December 14, 2017. Debtor

filed an objection. The Court heard arguments on this motion and the matter is

ready for decision.

## CONCLUSIONS OF LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states:

A party may move for summary judgment, identifying each claim or
defense–or the part of each claim or defense–on which summary
judgment is sought. The court shall grant summary judgment if the
movant shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law.
. . . .

6

> A party asserting that a fact cannot be or is genuinely disputed must
> support the assertion by . . . citing to particular parts of materials in the
> record . . . .

Fed. R. Civ. P. 56(a)–56(c)(1)(A); Fed. R. Bankr. P. 7056 (applying Fed. R. Civ. P.

56 to adversary proceedings).

Summary judgment is appropriate only if there is no genuine dispute as to

any material fact.  For a dispute to be "genuine," reasonable minds must be able to

differ about the result of a case because of that dispute, and it is material if it

"might affect the outcome of the suit."  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248, 251–52 (1986).

"To survive a motion for summary judgment, the nonmoving party must

substantiate [its] allegations with sufficient probative evidence [that] would permit

a finding in [its] favor based on more than mere speculation, conjecture, or

fantasy."  Int'l Union, United Auto., Aerospace & Agric. Implement Workers of

Am. Local Union 1613 v. Energy Mfg. Co. Inc., 173 F. Supp. 3d 815, 819 (N.D.

Iowa 2016) (internal quotation marks omitted) (alterations in original) (quoting

Barber v. C1 Truck Driver Training, LLC, 656 F.3d 782, 801 (8th Cir. 2011)).

"[S]elf-serving allegations and denials are insufficient to create a genuine issue of

material fact."  Id. (quoting Anuforo v. Comm'r, 614 F.3d 799, 807 (8th Cir.

2010)).  The Court, however, will make "all reasonable inferences in the light most

favorable to the nonmoving party." <u>Reed v. City of St. Charles</u>, 561 F.3d 788, 790 (8th Cir. 2009).

Along with its Motion for Summary Judgment, AY filed a Statement of Facts not in Dispute.  AY provided a citation to the record for every fact alleged in this document.  Debtor submitted no response to this document.  Since there is nothing in the record challenging AY's Statement of Facts not in Dispute, the Court concludes these facts are undisputed.

The only factual issues Debtor raises are in his Objection to Plaintiff's Motion for Summary Judgment ("Debtor's Objection").  The Court notes that Debtor does not provide any evidence to support the factual issues he raises. Several times in Debtor's Objection, he claims that AY holds documents that, if produced, would support his position.  AY did not receive a discovery request for any of the documents Debtor mentions.  There is, thus, no support in the record for Debtor's assertions.

Despite Debtor's failure to support the factual issues he raises with evidence, the Court will address them individually.  In paragraphs one and two of his Objection, Debtor argues that, as Senior Vice President of AY, he had discretion over distribution of executive compensation.  This fact is not material to the questions before the Court.  AY alleges that Debtor abused his discretion in

distributing executive compensation by misappropriating funds, not that he had no discretion.

In paragraphs three through five of his Objection, Debtor alleges AY received various payments from Debtor, an insurance provider, and an audit firm. These payments are not material to the questions before the Court because the validity of Debtor's promissory note and the amount still owing on that note, are not before the Court.  This adversary is about the dischargeability of the debt and AY's rights under the Amendment to Restitution Agreement.  If Debtor wishes to challenge the amount of AY's claim, he must file an Objection to Claim.

In paragraph six of his Objection, Debtor alleges that he was threatened with criminal prosecution at the time he signed the Restitution Agreement.  This fact is not material.  If Debtor wished to challenge the validity of the Restitution Agreement, he should have done so in the case brought before the Dubuque County District Court.  Debtor is barred from making additional arguments now on the validity of the Restitution Agreement under the doctrine of res judicata.

In paragraph seven of his Objection, Debtor alleges that AY breached the Amendment to Restitution Agreement by soliciting certain payments from Dubuque Bank & Trust in exchange for AY releasing certain liens.  AY does not dispute that it received payments from Dubuque Bank & Trust, but denies soliciting these payments.  Debtor has not provided any evidence to support his

argument that AY solicited these payments.  In the absence of evidence to the contrary, the Court finds that this is not a genuine dispute of material fact.

This Court finds that there is no genuine dispute as to any material fact.  It therefore will address whether AY is entitled to judgment as a matter of law on each of the claims before it, starting with Debtor's counterclaim.

## I.     Debtor's Counterclaim

In his Answer to AY's Complaint in the second adversary proceeding, Debtor makes a counterclaim against AY alleging that the Amendment to Restitution Agreement violates Iowa Code § 633A.2302(2).  Debtor also requests that the Court award him damages based on this violation.  AY argues in response that there is no violation of § 633A.2302(2).

Iowa Code § 633A.2302(2) recognizes the enforceability of spendthrift clauses in Iowa.  It states:

> A beneficiary shall not transfer, assign, or encumber an interest in a trust in violation of a valid spendthrift provision, and a creditor or assignee of the beneficiary of a spendthrift trust shall not reach the interest of the beneficiary or a distribution by the trustee before its receipt by the beneficiary.

Iowa Code § 633A.2302(2).

A spendthrift clause in a trust restricts the rights of both the beneficiary and the beneficiary's creditors in the trust:

> [A spendthrift clause] prohibits the beneficiary from selling, or otherwise transferring, the beneficiary's interest in the trust.  More

10

> particularly, the beneficiary cannot transfer her right to future payments
> from the trust, nor can the beneficiary's creditors collect future trust
> payments due to the beneficiary.

Martin D. Begleiter, <u>In the Code We Trust—Some Trust Law for Iowa at Last</u>, 49 Drake L. Rev. 165, 209 (2001); <u>see also</u> <u>In re Estate of Hord</u>, 821 N.W.2d 777, *4 (Iowa Ct. App. 2012), <u>rev'd on other grounds</u>, 836 N.W.2d 1, 7 (Iowa 2013).

Both parties agree that the trusts in issue, the J. Bruce McDonald Trust and the Delos L. McDonald Trust, contain spendthrift provisions. Neither party disputes the validity of those spendthrift provisions. Debtor argues that the procedure that allowed an attorney-in-fact to receive the distributions from the trusts and pay them to AY before they got to him violates the terms of the spendthrift trusts and § 633A.2302(2). AY argues that the spendthrift clauses are not violated here because distributions are first constructively received by Debtor via his attorney-in-fact and then made to AY. AY argues that once trust income is distributed to Debtor, it is no longer protected by the spendthrift provisions.

The case law supports AY's argument. Spendthrift protection ceases after trust proceeds are distributed. <u>Birdsell v. Coumbe</u> (<u>In re Coumbe</u>), 304 B.R. 378, 385 (B.A.P. 9th Cir. 2003) (quoting <u>Gordon C. York, Inc. v. Kragness</u> (<u>In re Kragness</u>), 58 B.R. 939, 944 (Bankr. D. Or. 1986)). Once the beneficiary of a spendthrift trust receives a distribution, he or she is free transfer those funds to a creditor, or any other third party, without violating the spendthrift provision.

11

In this case, Debtor executed a POA under which an attorney-in-fact receives the trust distributions and distributes them to AY on his behalf. An attorney-in-fact, appointed under a POA, acts as an agent for the principal. <u>See</u> Iowa Code § 633B.201. The attorney-in-fact does not have any rights personally in the property he or she manages on behalf of the principal. Courts have similarly held that an order from the beneficiary of a spendthrift trust to the trustee, asking the trustee to make payments to a third party on behalf of the beneficiary, may be treated as a revocable POA with the trustee acting as the attorney-in-fact. <u>In re Easton's Estate</u>, 13 N.Y.S.2d 295, 305 (Sur. Ct. 1939); <u>see also</u> Helene S. Shapo, George Gleason Bogert & George Taylor Bogert, <u>Bogert's Trusts and Trustees</u> § 226 (2017).

In this case, when the trust distributions were made to the attorney-in-fact, then transferred to AY, that property constructively passed through the Debtor's hands. By freely executing a POA and appointing an attorney-in-fact, Debtor did not "transfer, assign, or encumber [his] interest in a trust in violation of a valid spendthrift provision." Iowa Code § 633A.2302(2). Therefore, neither Debtor nor AY violated Iowa Code § 633A.2302(2) by signing the Amendment to Restitution Agreement. Since AY did not violate Iowa Code § 633A.2302(2), the Court need not consider if damages are available. Debtor's counterclaim is dismissed.

## II.    AY's Request for Injunctive and Declaratory Relief

The Court next turns to AY's request for the Court to invalidate Debtor's

May 10, 2017 revocation of his POA and to issue an injunction preventing him

from attempting to revoke his POA in the future.

This request for injunctive relief, at its core, raises a contract dispute.  AY

argues that by revoking his POA Debtor breached the Amendment to Restitution

Agreement.  Under that contract, AY agreed to cease collection activities in

exchange for Debtor executing a POA under which the appointed attorney-in-fact

receives trust distributions and pays them over to AY.  By asking the Court to void

Debtor's May 10, 2017 revocation of his POA and to issue an injunction against

future revocations, AY is essentially asking the Court to grant specific

performance as relief from Debtor's purported breach.  For the following reasons,

the Court declines to grant AY this remedy.

In Iowa, "[a] suit for specific performance is not a matter of absolute right

but is always addressed to the sound judicial discretion of the court."  Inc. Town of

Wahpeton in Dickinson Cty. v. Rocklin, 119 N.W.2d 880, 883 (Iowa 1963).  The

Court finds that specific performance is not the proper remedy because granting

AY's requested relief in this case would violate Iowa law.

AY is asking the Court to void Debtor's revocation of his POA and issue an

injunction preventing him from attempting to revoke the POA in the future.  AY is,

13

in essence, asking the Court to deem Debtor's POA irrevocable. As a general rule, a principal may revoke his POA at any time. Iowa Code § 633B.110(1)(c). AY puts forth two theories for why the Court should find an exception in this case.

For its first theory, AY cites a narrow set of cases holding that, when a POA or similar principal-agent relationship is established as part of a contract to benefit a third party, and the third party gives valid consideration, courts may consider the POA to be irrevocable. See MacGregor v. Gardner, 14 Iowa 326 (1862); see also Wood v. Kerkeslager, 74 A. 174 (Pa. 1909).

The Court declines to consider the POA irrevocable here. The present case is distinguishable from the cited cases because this case involves a spendthrift trust. To find the POA irrevocable here would turn a freely given appointment of an attorney-in-fact into a virtual assignment of Debtor's interest in a spendthrift trust. Such an assignment of interest would violate Iowa Code § 633A.2302(2). This situation is simply not contemplated in either of the cases AY cites.

Alternatively, AY argues that Debtor's POA functions as a security agreement, securing AY's interest in future trust distributions. AY argues that, because the POA is a security agreement, Debtor cannot revoke it until the debt underlying its security interest is repaid. AY cites no case law to support this theory and the Court finds no precedent for it. Moreover, allowing Debtor's POA

14

to function as a security agreement would again violate Iowa Code
§ 633A.2302(2).  AY's Request for Injunctive and Declaratory Relief is denied.

Having denied AY's request for injunctive relief, the Court must address
what remedy, if any, AY is entitled to.  It need look no further than the text of the
Amendment to Restitution Agreement.  Debtor agreed to voluntarily execute a
POA authorizing the attorney-in-fact to receive and pay over trust distributions to
AY.  Debtor executed the POA in exchange for AY agreeing to "cease and desist
from any pending collection activities and to forbear from initiating further (i.e.,
non-pending) collection activities **for so long as** [Debtor] complies with the
Agreement and all amendments thereto."  (Doc. 24-3 at 89) (emphasis added).

AY agreed to cease collection activities "for so long as" debtor complied
with the Amendment.  The Court finds that on the day Debtor signed his
revocation of POA, May 10, 2017, AY was released from its obligation to cease
collection activities.  This is AY's remedy.

AY was separately barred from pursing collection activities by the automatic
stay when Debtor filed for bankruptcy on May 10, 2017, the same day Debtor
signed his revocation of POA.  Therefore, AY lost no collection opportunities due
to Debtor's revocation.  Its Motion for Relief from stay will be decided following
resolution of the adversary case.

## III.    Dischargeability of Debt

AY has asked the Court to except its claim from discharge under 11 U.S.C. § 523(a)(4) and 11 U.S.C. § 523(a)(6).  The Court considers these grounds for exception from discharge in turn.

### A. Debtor's Debt to AY is Not Dischargeable Under § 523(a)(4)

11 U.S.C. § 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  The creditor bears the burden of proving its debts should be excepted from discharge under § 523(a)(4).  Arvest Mortg. Co. v. Nail (In re Nail), 680 F.3d 1036, 1038 (8th Cir. 2012).

Here, Debtor was "acting in a fiduciary capacity" when the alleged fraud or defalcation occurred.  It is well-established law that directors of corporations are fiduciaries of the corporation.  Wabash Ry. Co. v. Iowa & S.W. Ry. Co, 202 N.W. 595, 599 (Iowa 1925).  It is undisputed that Debtor was acting in his capacity as a director of AY at the time of the alleged fraud or defalcation.  This component of § 523(a)(4) is satisfied.

"[F]raud referred to in [§ 523(a)(4)] means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong."  Bullock v. BankChampaign, N.A., 569 U.S. 267, 273 (2013) (internal quotation marks omitted) (quoting Neal v. Clark, 95 U.S. 704, 709 (1878)).  Defalcation is defined broadly as the

misappropriation of money or embezzlement.  Id. at 271–72.  The Supreme Court

recently clarified that defalcation requires an intentional wrong.  Id. at 273.

AY relies in part on the promissory note Debtor signed as part of the

Restitution Agreement.  The recitals to the Restitution Agreement state that Debtor

"engaged in certain conduct not authorized by the Board of Directors, which

[Debtor] has voluntarily admitted, the consequences of which are reflected in the

McGladrey & Pullen letter dated May 16, 2012 . . . ."  A letter from McGladrey

LLP is attached to the Restitution Agreement.  The McGladrey letter outlines

certain payments between 2005 and 2012 that Debtor authorized from AY to

himself.  The majority of those payments were executive incentive compensation

distributions, which Debtor distributed entirely to himself, rather than to other

participants in the executive compensation pool.

Debtor voluntarily signed the Restitution Agreement.  In doing so, Debtor

admitted he acted wrongfully in misappropriating funds to himself and agreed to

pay restitution to AY.  Debtor's admission under the Restitution Agreement was

incorporated into a judgment in Dubuque County District Court Case No. 01311

LACV058015.

In addition to admitting that he misappropriated funds in the Restitution

Agreement, Debtor made several incriminating statements in his interview with

Control Risks.  In that interview, Debtor admitted that he started misappropriating

17

funds in 2004: "I started using the company's money for my own benefit."  Debtor

misappropriated funds primarily by making excessive allocations from the private

payroll account to himself, to the detriment of other pool participants.  He also

said, "[T]he glaring issue was the private payroll, and I take full responsibility for

it."  When asked where the money went, Debtor said much of it went to gambling

and bad investments in horses.  When asked if anyone knew about his fraud and

embezzlement, Debtor said no and "It was me.  It just got out of control."

There is sufficient evidence in the record to establish that Debtor committed

fraud and defalcation while he was a director at AY.  Debtor signed the promissory

note and Restitution Agreement admitting as much and agreeing to compensate

AY for his wrongful actions.  Debtor's debt to AY was "for fraud or defalcation

while acting in a fiduciary capacity, embezzlement, or larceny" and is therefore not

dischargeable under 11 U.S.C. § 523(a)(4).

### B.  Willful and Malicious Injury Under § 523(a)(6)

Section 523(a)(6) bars discharge of debts "for willful and malicious injury

by the debtor to another entity or to the property of another entity."  11 U.S.C.

§ 523.  "In the Eighth Circuit, the terms 'willful' and 'malicious' are two distinct

elements, each of which must be shown to establish an exception to discharge."

Dering Pierson Grp., LLC v. Kantos (In re Kantos for Cash Flow Mgmt., Inc.), 579

B.R. 846, 851 (B.A.P. 8th Cir. 2018).  "To be willful, the injury must be

intentional or deliberate." <u>Reshetar Sys., Inc. v. Thompson</u> (<u>In re Thompson</u>), 686

F.3d 940, 947 (8th Cir. 2012) (citation omitted) (internal quotation marks omitted).

However, "[i]f the debtor knows that the consequences are certain, or substantially

certain, to result from his conduct, the debtor is treated as if he had, in fact, desired

to produce those consequence[s]." <u>MarPad, LLC v. Seevers</u> (<u>In re Seevers</u>), 574

B.R. 832, 859 (Bankr. D. Neb. 2017) (second alteration in original).

> Malice, on the other hand,

> requires more than just reckless behavior by the debtor. The defendant
> must have acted with the intent to harm, rather than merely acting
> intentionally in a way that resulted in harm. . . . [m]alice requires
> conduct more culpable than that which is in reckless disregard of the
> creditor's economic interests and expectancies. The debtor's
> knowledge that he or she is violating the creditor's legal rights is
> insufficient to establish malice absent some additional aggravated
> circumstances.

<u>Id.</u> (citations omitted) (internal quotation marks omitted) (alterations in original).

In both the Restitution Agreement and in the interview with Control Risks,

Debtor admitted to acting intentionally. Debtor misappropriated funds to himself

from AY, causing direct financial harm to AY. Debtor signed the Restitution

Agreement and promissory note admitting his conduct was intentional and

agreeing to compensate AY for that harm. Based on Debtor's position at the

company he knew or should have known that the injury to AY would result from

his actions. As a result, the Court considers the injury to AY to have been

"willful." It was not, however, "malicious." The record does not support a finding

19

that Debtor "acted with the intent to harm, rather than merely acting intentionally in a way that resulted in harm." The record here shows only that Debtor acted purely out of his own interest and in reckless disregard of AY's interest. AY has not produced enough evidence at summary judgment to definitively establish "malicious injury" under § 523(a)(6). "Negligent or reckless acts . . . do not suffice to establish that a resulting injury is 'willful and malicious.'" Kawaauhau v. Geiger, 523 U.S. 57, 64 (1998).

## CONCLUSION

The Court finds that AY did not violate Iowa Code § 633A.2302(2) and therefore dismisses Debtor's counterclaim. The Court denies AY's request to void Debtor's May 10, 2017 revocation of his POA and denies AY's request for injunctive relief preventing Debtor from attempting to revoke his POA in the future. The Court finds that, as of Debtor's revocation of his POA, AY is no longer contractually obligated to cease collection activities. Finally, the Court finds that Debtor's debt to AY is not dischargeable under 11 U.S.C. § 523(a)(4).

Following this decision, the Court will set a status conference with the parties regarding the proper distribution of funds currently held by the trustees of the J. Bruce McDonald Trust and the Delos L. McDonald Trust, as well as AY's Motion For Relief From Stay.

**WHEREFORE**, AY's request for Summary Judgment is GRANTED IN PART.

**FURTHER**, the debt owed by Debtor to AY under the Restitution Agreement is not dischargeable under 11 U.S.C. § 523(a)(4).

**FURTHER**, AY's Request for Injunctive and Declaratory Relief is DENIED.

**FURTHER**, Debtor's Counterclaim is DISMISSED with prejudice.

**FURTHER**, judgment shall enter accordingly in favor of AY McDonald Industries, Inc. against Michael B. McDonald as to the dischargeability of the Restitution Agreement.

Dated and Entered:
April 20, 2018

THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE